### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### IMPERIAL–EASTMAN CORPORATION, Respondent.

### No. 14097.

United States Court of Appeals
Seventh Circuit.

Sept. 23, 1963.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin Pollack, Atty., N. L. R. B., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Joseph C. Thackery, Atty., N. L. R. B., Washington, D. C., for petitioner.

John Harrington, Albert J. Smith, Chicago, Ill., for respondent.

Before DUFFY, CASTLE and KILEY, Circuit Judges.

CASTLE, Circuit Judge.

This is a petition of the National Labor Relations Board pursuant to Section 10 (e) of the National Labor Relations Act, as amended (61 Stat. 136, 73 Stat. 519, 29 U.S.C., § 151 et seq.), for enforcement of the Board's order issued against respondent on November 26, 1962. This Court has jurisdiction, the unfair labor practices having occurred at Manitowoc, Wisconsin, where respondent manufactures hose assemblies.

During the year 1960 the respondent sold and shipped products valued in ex-

cess of $50,000 to customers outside the State of Wisconsin.

The Board found that by promising benefits before a Board election respondent interfered with its employees' freedom of choice in selecting a bargaining representative and thereby violated Section 8(a) (1) of the Act.

Eastman Manufacturing Company of Manitowoc and Imperial Brass Company of Chicago merged on September 20, 1960, to form the respondent company. At employee meetings in Manitowoc in September-October of 1960, and January-February, 1961, respondent described benefits it had given or would give the Manitowoc employees.

In a letter dated June 20, 1961, typical of many of those sent to the employees, Vice-President Melvin Brose listed such benefits as a "floating holiday," longer vacation periods, overtime for Saturday work and liberalized life insurance, and additional benefits were promised for the future, such as job posting, job evaluation and reclassification, an incentive program, and further improvements in insurance. Also, Brose's letter contained the following language:

> "We have been told that some of you recently received a letter from the International Association of Machinists, AFL-CIO, enclosing a card which they have requested you to fill out and return.
>
> "I think it highly important that you should consider very carefully whether it is to your best advantage to hire an outside party to represent you. Never in the history of our Company—in either Division—has anyone had to pay one cent in order to get constantly increasing improvements in wages and other benefits, and there is no reason for you to do so in the future."

These representations were made at a time of the International Association of Mechanic's Union activities. After this union activity ceased nothing was done about the benefits until October, 1961 when the United Steelworkers of America, AFL-CIO (hereinafter called the Union), began a drive to organize respondent's employees. The Union asked respondent for recognition on August 4, 1961, and filed a petition for a Board election. On October 12 an election was scheduled at the Manitowoc plant for October 27th. Between October 17 and 24, teams of management representatives consisting of two officials visited the employees in their homes. Vice-President Brose "briefed" the teams in a general meeting before the visits began. Brose and President Musham also sent letters to each employee on October 17. These letters from management were the first received by the Manitowoc employees since Brose's June 20 letter during the organizing campaign of the IAM. In these letters it was stated that a union was unnecessary to achieve the goals sought by the employees.

■ Also in the home visits Hauser, one of the employees, was told that the company intended "to bring back the bonus". Employees were also told that there was a form of sickness and health insurance ready to be presented to employees, but that it was being held up because of the coming vote, and if the union would get in the plan would probably have to be bargained for first. These interviews also revived old promises about which nothing had been done since June to October, including job posting, job evaluation and incentive, improved insurance, and to look into various complaints listed by employees which included wage increases, vacations, extra tools, job transfers, extra holidays and pensions. This was the first time in the history of the Company that officers of the company had ever personally called on the employees. The Board was warranted in inferring from the promises of benefits that they were made for the purpose of influencing employees in their choice of a bargaining representative in the coming election, and that they were in violation of Section 8(a) (1) of the Act. N. L. R. B. v. West Coast Casket Co., 9 Cir., 205 F.2d 902, 905.

The Board correctly concluded from respondent's course of conduct that the promised benefits were "for the purpose of thwarting self-organization" and it makes no difference that "no strings were attached to the offers and no threats [were made] to withdraw benefits if the employees persisted in supporting the union". This principle is set out in the opinion written by Judge Duffy in Indiana Metal Products Corp. v. N. L. R. B., 7 Cir., 202 F.2d 613, 620.

There is substantial evidence in the record taken as a whole to sustain the Board's finding that promises of benefits were made to the employees for the purpose of influencing their vote in the election to be held on October 27th.

The petition for enforcement is granted.